Case No. 21-55682

Ninth Circuit Court of Appeals


Peter Strojnik (Appellant)

vs.

Village 1017 Coronado, Inc. dba Hotel Marisol Coronado


Appeal from the United States District Court for the District of Arizona


# APPELLANT'S OPENING BRIEF


Peter Strojnik
7847 N. Central Ave.
Phoenix, Arizona 85020
(602) 524-6602
ps@strojnik.com
Appellant

# TABLE OF CONTENTS

## TITLE                                                                    PAGE

TABLE OF CONTENTS…………………………………………………..   i

TABLE OF CITATIONS………………………………………………….   ii

INTRODUCTION………………………………………………………   1

JURISDICTIONAL STATEMENT……………………………………...   2

STATEMENT OF ISSUES FOR REVIEW…………………………….   3

STATEMENT OF THE CASE………………………………………….   4

STATEMENT OF FACTS RELEVANT TO THE ISSUES……………   14

SUMMARY OF APPELLANT'S ARGUMENT………………………   15

APPLICABLE STANDARDS OF REVIEW……………………………   16

ARGUMENT……………………………………………………………   16

    1.  District Court Lacked Jurisdiction to Award Attorney's
       Fees………………………………………………………………   16

    2.  District Court Erred in the Enforcement of Attorney's Fees
       Judgment through a Contempt Proceeding……………………   17

    3.  District Court Erred in Threatening Appellant with Coercive
       Incarceration if He Did Not Pay The Entire "$44,246
       Immediately And Without Delay"…………….......................   19

CONCLUSION AND PRAYER FOR RELIEF…………………………   20

CERTIFICATES…………………………………………………………   21

# TABLE OF CITATIONS

## CASES          PAGE(S)

*Alves v. U.S. Dist. Court for Eastern Dist. of California- Fresno,* 967 F.2d 583 (9th Cir. 1992)………………………………………...   3

*Bender v. Williamsport Area Sch. Dist.* 475 U.S. 534, 541-42 (1986)……................................................................................   17

*Bender v. Williamsport Area School District,* 475 U.S. 534, 541-42 (1986)………………………………………………………………   16

*Davies v. Grossmont Union High School Dist*., 930 F.2d 1390, 1393 (9th Cir.), cert. denied, 111 S.Ct. 2892 (1991)………………………...   3

*Gabovitch v. Lundy,* 584 F.2d 559, 560-61 (1st Cir. 1978)…………..   18

*Hilao v. Estate of Marcos*, 95 F.3d 848 (9th Cir. 1996)………………   18

*In re Wallace*, 490 B.R. 898, 906 (B.A.P. 9th Cir. 2013)……………   17

*Lahoti v. Vericheck, Inc*. 636 F. 3d 501 (9th Cir 2011)………………   16

*Shuffler v. Heritage Bank*, 720 F.2d 1141, 1145 (9th Cir. 1983)……..   3,16, 17, 18

*Smith v. Brady*, 972 F. 2d, 1095, 1097 (9th Cir. 1988)………………   17

*Summer v. Interstate Tractor Equip. Co.*, 466 F.2d 42, 49-50 (9th Cir 1972)…………………………………................................................   16

## OTHER          PAGES

Arizona Revised Statutes §25-511.01………………………………...   9

28 U.S.C. §§ 1331 and 1367…………………………………………….. 1

28 U.S.C. §2007(a)…………………………………………………… 16, 20

Cal. Const. at §10………………………………………………….. 16

28 U.S.C. §2007(a)…………………………………………………… 19

## INTRODUCTION

This appeal examines whether attorney's fees award can exceed the flat fee agreement entered between Appellee and his counsel and whether a fees award is enforceable through a contempt proceeding and a threat of coercive incarceration. This appeal also examines whether the district court had jurisdiction over any portion of the case following its initial finding that it lacked subject matter jurisdiction for want of standing.

## JURISDICTIONAL STATEMENT

**A. Basis for District Court's Subject-Matter Jurisdiction:** The district court had federal question jurisdiction over the ADA claims and pendent jurisdiction over state law claims. 28 U.S.C. §§ 1331 and 1367.

**B. Basis for Claiming Judgment is Final**: On June 15, 2021, district court entered the Order Re: Civil Contempt & Coercive Incarceration, Dkt. at 45, (ER-6) stating, in part:

> For the following reasons, the Court orders Mr. Strojnik to appear on **June 28, 2021, at 3:15 p.m.**, for a contempt hearing. If Mr. Strojnik has not complied with the Court's order to pay $44,246 to Defendant by the hearing, **the Court will place him into coercive incarceration until his contempt is purged or the Court finds that continued incarceration no longer serves a coercive purpose**. (Emphasis in original). *Id.* 1:16-20.

***

## III. CONCLUSION AND ORDERS

In light of the foregoing, the Court **ORDERS** as follows:

1

1. Mr. Strojnik is in civil contempt of the Court's Attorney's Fees Order (ECF No. 22) [sic][1].

**2.** In addition to the award of $21,995 [sic] in attorney's fees owed to Defendant, Mr. Strojnik shall pay Defendant $22,251 as a compensatory sanction for his civil contempt. **Hence, Mr. Strojnik shall pay Defendant a total of $44,246 immediately and without delay.**

3. **Mr. Strojnik is ordered to appear in Courtroom 4B on June 28, 2021, at 3:15 p.m., for a contempt hearing.** At the contempt hearing, the Court will determine whether Mr. Strojnik has complied with the Court's order to pay Defendant $44,246. If Mr. Strojnik does not appear for the hearing, the Court will issue a bench warrant for his arrest to secure his appearance at a contempt hearing.

4. Defendant may attend the hearing by Zoom. Further, the Court orders Defendant to file by 12:00 p.m. on June 28, 2021, a notice stating whether it has received payment in full from Mr. Strojnik.

5. **If the Court finds at the June 28, 2021, hearing that Mr. Strojnik has not complied with the Court's order to pay Defendant $44,246, the Court will place Mr. Strojnik into coercive incarceration until he complies with the Court's order or the Court finds that continued incarceration no longer serves a coercive purpose.** At any time, Mr. Strojnik will be able to purge his coercive incarceration by paying $44,246 to Defendant.

**IT IS SO ORDERED.** (Emphasis in original). *Id.* at 6:1-22.

C. **Filing Dates Establishing Timeliness of Appeal:** Appellant timely filed his

Notice of Appeal was filed on June 28, 2021. Dkt. at 49. The Notice of Appeal

was filed within thirty days from the district court's Order Re: Civil Contempt

& Coercive Incarceration (ER-6).

---

[1] The referenced order was subsequently substituted with a Final Judgment, Dkt. at 25. (ER-4)

**D.** __Assertion That Appeal is From Final Order and Judgment:__ "A district court's post-judgment contempt order is a final, appealable order. *Davies v. Grossmont Union High School Dist*., 930 F.2d 1390, 1393 (9th Cir.), cert. denied, 111 S.Ct. 2892 (1991)." *Alves v. U.S. Dist. Court for Eastern Dist. of California- Fresno,* 967 F.2d 583 (9th Cir. 1992). ""Where the contempt proceeding is the sole proceeding before the district court, an order of civil contempt finding a party in contempt of a prior final judgment and imposing sanctions is a final decision under section 1291." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1145 (9th Cir. 1983)

## STATEMENT OF ISSUES FOR REVIEW

1) Whether an award of attorney's fees to Appellee in the amount of $44,246 was error in light of Appellee's $2,500 flat fee agreement with its counsel Mr. Stillman; and

2) Whether a finding of civil contempt for non-payment of attorney's fees coupled with a threat of coercive incarceration is error:

   a. As a matter of procedure; and/or

   b. Where Appellant proved inability to pay; and

3) Whether the district court retained jurisdiction over any aspect of the case following its finding that it lacked subject matter jurisdiction for want of standing.

## STATEMENT OF THE CASE

On November 20, 2019, Appellant filed an Americans with Disabilities Act action against Appellee Village 1017 Coronado, Inc. dba Hotel Marisol Coronado. Dkt. at 1. On June 16, 2020, the case was dismissed for lack of standing. Dkt. at 15 (ER-1).

On June 30, 2020, Appellee filed a *Motion for Attorney's Fees or in the alternative, For Sanctions pursuant to 28 U.S.C. § 1927 and This Court's Inherent Powers*. Dkt. at 17. The motion for attorney's fees was based on Appellee's counsel's, Mr. Stillman's, sworn declaration that he had an hourly fee agreement at $500.00 per hour. The sworn hourly fee agreement was evidenced by Mr. Stillman's invoice to his Appellee client dated June 30, 2020, in which Mr. Stillman swore that he billed his client $20,995. *See* Exhibit 4 to Declaration of Phillip H. Stillman, Dkt. at 17-2 at pp. 61-62 (ER-2). The sanctions portion of the motion was based on the attached Exhibit 2, the IME Report issued by a San Diego orthopedic surgeon Dr. Greenfield which found that Appellant was indeed disabled as defined in the 2008 ADA Amendment Act (ER-3)[2].

On January 13, 2021, the district court granted Appellee's motion for fees, Dkt. at 22, stating, in part:

---

[2] Mr. Stillman represented to the district court that Dr. Greenfield's IME Report showed otherwise. Dr. Greenfield's report was filed in another case, *Strojnik v. Evans*, 3:19-cv-00650-BAS-AGH which resulted in a dismissal of a similar claim that Appellant was not disabled. The same judge who presided in the current case also presided in the *Evans* case and was familiar with Dr. Greenfield's report confirming Appellant's ADA impairments.

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Attorney's Fees (ECF No. 17) and awards Defendant $21,995 in attorney's fees. Plaintiff is ordered to pay this amount forthwith. *Id.* at 8:21-23.

On January 21, 2021, Appellee filed a Notice of Lodging Proposed Judgment, dkt. at 24, in which he modified the above quoted language to state that the attorney's fees are not actually owed to Appellee, but to Appellee's counsel Mr. Stillman. The Proposed Judgment omitted the language requiring the fees to be paid "forthwith." The district court signed the proposed Final Judgment on January 25, 2021, Dkt. at 25. (ER-4). The Final Judgment stated, in part:

> Therefore, pursuant to this Court's Order Granting Attorney's Fees, **JUDGMENT IS HEREBY ENTERED** in *__favor of Philip H. Stillman, attorney for Defendant Village 1107 Coronado, Inc. and against plaintiff Peter Strojnik, Sr.,__* in the amount of $21,995.00, together with post-judgment interest accruing at 0.104% running from January 12, 2021 until the date of payment. (Capitalized emphasis in original. Italicized, bold and underlined emphasis supplied.)

The Final Judgment did not contain any order to pay at a specific time. It was no more than a standard money judgment executable pursuant to Rule 69, Fed. R. Civ. P.

On February 2, 2021, Appellee filed its Application for an Order to Show Cause Re: Contempt for Appellant's inability to pay the attorney's fees judgment "forthwith". Dkt. at 26. The district court issued its OSC on March 29, 2021. Dkt. at 27.

Appellant mailed[3] his Verified Response to the district court on April 8, 2021, but the district court did not record the Verified Response on its docket until April 15, 2021 when it filed it nunc pro tunc to April 14, 2021. Dkt. at 33. In his Verified Response, Appellant verified that all his income and assets are subject to a 2013 domestic relations judgment order for spousal maintenance secured by a court ordered UCC-1 financing statement. Exhibit 1 to dkt. at 33.

In the meantime, on April 12, 2021, Appellee file its Response to the OSC, Dkt. at 28. On the same day, the district court ordered Appellant to produce evidence of his inability to pay. Dkt. at 29. The following day the district court issued its Order finding Appellant in contempt and fined Appellant $220.00 for each day Appellant is unable to pay the attorney's fees. Dkt. at 31.

Because Appellant's Response was not docketed until after the Court ruled, the Court subsequently set aside the contempt order, and scheduled a civil contempt hearing for June 14, 2021[4]. Dkt. at 34.

Appellant complied with the district court order and produced additional financial information showing Appellant's inability to pay. Dkt. at 40.

---

[3] Appellee was not ECF authorized.
[4] The hearing date was initially scheduled for June 7, 2021, dk. At 34, but was subsequently changed to June 14, 2021. Dkt. at 41.

On May 18, 2021, Appellant discovered that Appellee's attorney's, Mr. Stillman's, declaration that his fee agreement with Appellee was based on a $500 hourly rate and that his client owed him $20,995 in attorney's fees was false.

In his Motion for Order to Show Cause, Dkt. at 43 (ER-5), Appellant noted that Appellee's counsel, Mr. Stillman, gets his hotelier clients through his partnership with California's Hotel and Lodging Association ("CHLA") *Id.* at 7:19-28:



**ADA Protection Program**

- Serial drive-by/call-in lawsuits have substantially increased over recent years with plaintiffs alleging variations of several ADA violations.
- Recent lawsuits have centered on:
    - Website compliance (no accessibility description; no room description; no ability to reserve accessible rooms) and
    - Hearing impairment (failure to provide TTY's or assistive listening devices.)
- A handful of attorneys and plaintiffs are the primary source of these complaints.
- **Through CHLA's partnership with Stillman & Associates, CHLA members who have been sued for Unruh Act or ADA claims can hire Philip Stillman for a flat legal fee to defend them in the case.**

Appellant further discovered through the CHLA website that Appellee's attorney's CHLA fee is a flat fee of $2,500:

**ADA Lawsuit Protection Program**

CHLA offers a legal support program for members who are victims of serial drive-by lawsuits that allege violations of the Americans with Disabilities Act. Our members who have been sued for Unruh Act or ADA claims now can hire CHLA's preferred attorney, who specializes in ADA lawsuits, for a flat legal fee of $2,500* per claim to defend them, dramatically less than the legal fees members otherwise would incur to defend such cases. Join CHLA to utilize this valuable program. If you have any questions on this program or how to join CHLA and utilize our ADA Lawsuit Protection Program, please email Sandra@calodging.com or complete the form below.

Id. at 8:1-9. Mr. Stillman never denied that his fee agreement was a $2,500 flat fee. Nonetheless, the district court declined to take any action on this Motion.

At the time of the hearing on June 14, 2021, the Court was aware that the entirety of Appellant's income from whatever source and all his assets were subject to the Court Ordered priority U.C.C. lien that had been in place since December of 2013 by the Order of the Domestic Relations Judge in La Paz County Superior Court, cause number DO 2013-00120 styled *In Re The Marriage of Tanya C. Strojnik and Peter Strojnik*. Dkt. at 33. Appellant advised the Court that any payment to a subsequent judgment creditor, either to Appellee or Appellee's counsel, would constitute a fraudulent transfer in violation of the 2013 divorce decree. It is also noted that non-payment of a court ordered spousal maintenance is a class 1 misdemeanor under Arizona law. *See* Arizona Revised Statutes §25-511.01.

Appellant further provided bank statements showing that that as of April 19, 2021, bank accounts under Appellant's control stood as follows: Navy Federal

8

Union: $10.02. Bank of Hawaii: $118.36. Chase: 231.12. The remaining assets were sworn under oath to be a Computer and Phone: $800.00, leased car: $0.00, clothing and misc.: $250.00, cash on hand: $5.00. *See Verified Motion to Stay Order dated June 28, 2021, alternatively, Motion to Stay Order of Court dated June 28, 2021, to Determine the Correct Judgment Creditor*, Dkt. at 57. Appellant had previously disclosed that his spousal maintenance arrearages arising from a 2013 divorce stood at $481,576.10. *Id.* and Dkt. at 33.

Despite all the uncontroverted documentary evidence produced by Appellant evidencing his level of destitution, district court expressed her opinion, first on June 14, 2021, and then again on June 28, 2021, that Appellant was dishonest. At least twice, the Court stated, paraphrasing, "I do not believe anything you say, Mr. Strojnik." The Court's lack of credulity is unexplainable. Appellant can only surmise that the Court's doubts were based on Appellant's disclosure that during five years prior, he donated $1.2M± to a 501(c)(3) Organization for the disabled. This donation was made through direct assignment of attorney's fees earned by Appellant in his civil rights representation of the disabled. The proof of these direct assignments is contained in the 239 page AID Foundation accounting which Plaintiff is producing to the District Court for in camera review on June 28, 2021.

The lack of credulity may also be based on amount of funds deposited into Appellant's operating account (the "Lunar Eclipse account"), however, the monthly statements produced by Appellant show unequivocally that the all the

deposits paid into that account were paid out to third party vendors, Appellant's former wife for spousal maintenance, and for business expenses. As of March 31, Appellant's Lunar Eclipse account stood at $93.42. As of April 19, 2021, the Lunar Eclipse account stood at $231.12.

At the June 14th hearing, the Court accepted Mr. Stillman's request for an additional fee award of $20,340.00 for his 2 hour attendance at the hearing. Dkt. at 45 (ER-6). The Court found that Mr. Stillman's request for another $22,251 for the two hour hearing was "reasonable and appropriate". Id. Plaintiff was not granted the right to review Mr. Stillman's request for additional attorney's fees, nor was the motion for additional fees placed in the docket.

Court's June 14, 2021 Order, Dkt. at 45 (ER-6), modified the sanction from payment of a $220.00 daily fine to a threat of incarceration. The Court ordered Appellant to pay 44,246.00 by June 28, 2021. If Appellant did not pay Mr. Stillman the $44,246.00, Appellant would be placed "into coercive incarceration until" Appellant pays the money judgment. If Appellant did not pay $44,246.00 in 14 days, he would be placed in what has been historically known as a "debtor's prison".

Under the threat of incarceration, Appellant spent the next two weeks between June 14 and June 28 desperately attempting to borrow from credit cards, family and friends, and was ultimately able to offer Mr. Stillman the entire sum of $44,246 payable out of his social security payments at the rate of $1,000.00 per

month. As a gesture of good faith, Appellant sent Mr. Stillman $1,450 through Venmo charged against his MasterCard. Fearing the loss of freedom, Plaintiff intended to send him another $4,000.00 through a Visa Card, but the Visa card had been blocked. Dkt. at 57.

Mr. Stillman rejected Plaintiff's offer, stating,

I'm sorry Peter, I am not going to carry this for 3.5 years. I will do $45,000, payable 30K immediately and the remainder due on August 1, with no right to cure. A failure to pay the second payment will be deemed to be a violation of the court's order and you will be remanded to custody without further notice. This is subject to court approval. *Id.*

In other words, Mr. Stillman, knowing that Appellant was about to be incarcerated in a debtor's prison, increased his demand by $2,204 over the amount ordered by the Court. As Appellant noted in *his Notice of Partial Payment With Undertaking To Pay Full Amount Plus Interest,* dkt. at 51, "[i]t became clear that Mr. Stillman's intent was to force Plaintiffs friends and family to pay the Final Judgment to keep Plaintiff free of incarceration. Mr. Stillman said that much. The Final Judgment, however, is an obligation of Plaintiff and not of his friends or family."[5]

---

[5] Mr. Stillman was aware that Appellant's former wife's continued receipts of spousal maintenance were dependent on Appellant's continued ability to work. He knew that Appellant's former spouse would not receive spousal maintenance payments if Appellant were incarcerated. Therefore, Mr. Stillman threatened Appellant's former spouse with a fraudulent conveyance lawsuit unless *she* paid *him* the money owed by Appellant. Mr. Stillman knew, however, that a UCC-1 liened property is not an "asset" subject to a fraudulent conveyance claim. *See*

Prior to attending the hearing on July 28, 2021, Appellant filed the *Notice of Emergency Appeal* Dkt. at 49.

Plaintiff then proceeded to the courtroom where he noted six or seven U.S. Marshalls waiting to take the 69 year old, 160 lbs Appellant into coercive custody. The Court inquired whether Plaintiff had $4,000.00 available on his Visa credit card. Plaintiff responded that he spent $505.00 for the Notice of Appeal fee and that there was only $3,500.00 left. The Court ordered Plaintiff to borrow the money against his credit card and pay that amount to Mr. Stillman. With six or seven fully uniformed U.S. Marshalls in the Courtroom, Appellant had no choice but to consent to this coercive order.

Almost immediately after ordering Appellant to borrow $3,500 against his credit card and pay the money to Mr. Stillman on, the district court judge left the bench and, upon return, recalled that non-payment of a judgment does not subject a judgment debtor to a contempt proceeding. As stated in the June 28, 2021, minute entry, dkt. at 54:

> Minute Entry for proceedings held before Judge Cynthia Bashant: Contempt Hearing held on 6/28/2021. Defendant ordered to brief whether contempt process is available in light of In re Wallace, 490 B.R. 898, 906 (B.A.P. 9th Cir. 2013), and Shuffler v. Heritage Bank,720 F.2d 1141 (9th Cir. 1983). Both parties may submit a brief by July 14, 2021. Mr. Strojnik ordered to overnight mail $3,500

Arizona's Fraudulent Transfer Act §44-1001(1)(a). ("Asset" means property of a debtor, but asset does not include any of the following: …(a) Property to the extent it is encumbered by a valid lien.")

12

payment to Defendant. Mr. Strojnik ordered to continue making prompt payments. Mr. Strojnik ordered to provide records from $1.2million in donations to the Court by July 2, 2021. Mr. Strojnik also ordered to provide canceled checks for the Lunar Eclipse account by July 2, 2021. Contempt order (ECF No.45) continued 8/2/2021 03:00 PM in Courtroom 4B before Judge Cynthia Bashant… (Entered: 06/29/2021)

Appellant dutifully produce all required records to the district court and to Mr. Stillman, as ordered. Dkt. at 55.

On June 28, 2021, Appellant filed his Notice of Emergency Appeal. Dkt. at 49 (ER-7).

On June 28, 2021, Appellant overnight mailed to the district court his *Verified Motion to Stay Order dated June 28, 2021, alternatively, Motion to Stay Order of Court dated June 28, 2021, to Determine the Correct Judgment Creditor*. Dkt. at 57 (ER-8). In it, Appellant provided a clear restatement of the case and of his inability to pay, and reiterated that that Appellee's counsel, Mr. Stillman, gets his hotelier clients through a partnership with California's Hotel and Lodging Association ("CHLA") at a flat fee of $2,500.00.

On July 28, 2021, Appellant received an email from the district court advising that the continued contempt hearing scheduled for August 2, 2021, was vacated. Dkt. at 59.

On September 15, 2021, Appellee, through Mr. Stillman, filed yet another Motion for Contempt, Dkt. at 61. Appellant has not responded, and the district court has taken no action.

## STATEMENT OF FACTS RELEVANT TO THE ISSUES

Appellee's counsel, Mr. Stillman, is a partner with the CHLA, non-lawyer association. Pursuant to his partnership agreement, he took the current case on a $2,500 flat fee.

Contrary to his flat fee agreement, Mr. Stillman swore under oath that he took the case at a $500.00 per hour fee. Based on this misrepresentation, the district court awarded Appellee $44,246 in fees. Of the $44,246 in awarded fees, $20,995 was granted for Appellee's successful argument that the district court lacked jurisdiction for want of standing, and $22,251 was grated for Mr. Stillman's two hour contempt hearing on June 17, 2021. The $22,251 for a two hour hearing was granted without a docketed application and without opportunity to respond. Appellant was ordered to pay the entire amount "immediately and without delay" under a threat of incarceration. Dkt. at 45 (ER-6) at 6:5-8.

Plaintiff paid Appellee's counsel Mr. Stillman $1,450. Dkt. at 57. Appellee's counsel, Mr. Stillman, never denied that he kept this money for himself without forwarding it to his client. *See* the *Verified Motion to Stay Order dated June 28, 2021, alternatively, Motion to Stay Order of Court dated June 28, 2021, to Determine the Correct Judgment Creditor*. Dkt. at 57.

## SUMMARY OF APPELLANT'S ARGUMENT

Appellant does not challenge the dismissal of the ADA claim for lack of standing. Appellant feels that he has been unfairly targeted by the district court's

threatening Appellant with incarceration in a debtor's prison, by refusing to accept

verified and indisputable fact of Appellant's insolvency based in part on a prior

and superior divorce judgment and UCC-1 lien, by constantly expressing her

unaccountable and insupportable opinion that Appellant is dishonest, while at the

same time allowing Appellee's attorney's, Mr. Stillman's, to falsely verify that his

client owes him tens of thousands of dollars when his agreement with the client

was a flat fee agreement for $2,500. Appellant also objects to district court's

continued exercise of jurisdiction despite its prior order finding lack of jurisdiction

for want of standing.

## APPLICABLE STANDARD OF REVIEW

1. Award of Attorney's Fees is Reviewed for Abuse of Discretion. *Lahoti v.*
   *Vericheck, Inc*. 636 F. 3d 501 (9th Cir 2011)

2. Award of attorney fees where the district court lacked jurisdiction for want of
   standing is reviewed de novo. *Latch v. United States*, 842 F.2d 1031, 1032 (9th
   Cir. 1988) Standing is a jurisdictional issue. *Bender v. Williamsport Area*
   *School District,* 475 U.S. 534, 541-42 (1986); if the district court lacked
   jurisdiction over the underlying suit, "it had no authority to award attorney's
   fees". *Latch,* 842 F.2d at 1033.

3. Contempt of Court for failure to pay judgment is impermissible as a matter of law. *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1148 (9th Cir. 1983). It is reviewed de novo.

4. Coercive incarceration violates America's rejection of British "debtor prisons." 28 U.S.C. §2007(a) and Cal. Const. at §10. It is a jurisdictional issue reviewed *de novo.*

## **ARGUMENT**

## 1. **The District Court Lacked Jurisdiction to Award Attorney's Fees**

A court may raise the question of subject matter jurisdiction at any time during the pendency of the action, even on appeal. *Summer v. Interstate Tractor Equip. Co.*, 466 F.2d 42, 49-50 (9th Cir 1972).

Before considering whether attorney's fees are merited, the court must first consider whether an award of attorney's fees is within the court's power. Where, as here, a court has dismissed a case for lack of subject matter jurisdiction, it retains no jurisdiction to award attorney's fees. *Smith v. Brady*, 972 F. 2d, 1095, 1097 (9th Cir. 1988). The court does not have jurisdiction to hear a case where the plaintiff has no standing. *Bender v. Williamsport Area Sch. Dist.* 475 U.S. 534, 541-42 (1986)

Here, the district court dismissed the action for want of standing, a jurisdictional finding, but nonetheless entered two separate awards of attorney's

16

fees, found Appellant in contempt despite his proven inability to pay, and threatened him with a debtor's prison.

It was error for the district court to award attorney's fees because it previously found that it had no jurisdiction to do so.

## 2. District Court Erred in the Enforcement of Attorney's Fees Judgment through a Contempt Proceeding.

In *In re Wallace*, 490 B.R. 898, 906 (B.A.P. 9th Cir. 2013), the Court confirmed that "the proper means to secure compliance with a money judgment is to seek a writ of execution'" (citing cases). And in *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1148 (9th Cir. 1983), the Court held that ""to the extent the order of contempt [is] intended to enforce payment, it cannot be sustained."

Rule 69 (a)(1) provides that the "[p]rocess to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise." The 9th Circuit Court of Appeals has noted that this sentence "seemingly leaves open the possibility of securing payment of a money judgment through the imposition of a contempt sanction". *Shuffler,* 720 F.2d at 1148. "Nonetheless", the 9th Circuit Court of Appeals has held, "we do not interpret the exception to execution to permit a federal court to 'enforce a money judgment by contempt or methods other than a writ of execution, except in cases where established principles so warrant' ". Id. (quoting 7 J. Moore & J. Lucas, Moore's Federal Practice p 69.03 (2d ed. 1982)). Thus, "[t]he proper means ... to secure compliance

with a money judgment is to seek a writ of execution". Id. at 1147. See also *Gabovitch v. Lundy,* 584 F.2d 559, 560-61 (1st Cir. 1978) ("[T]he legislative history and judicial application of Rule 69(a) make clear that the first sentence of the Rule expresses a limitation on the means of enforcement of money judgments and does not create a general power to issue writs of execution in disregard of the state law incorporated by the rest of the Rule.... [T]he purpose of the first sentence of Rule 69(a) is to restrict remedies on money judgments to legal process and to avoid broad invocation of in personam relief, except where established principles warrant equitable relief."). *Hilao v. Estate of Marcos*, 95 F.3d 848 (9th Cir. 1996) Appellant agrees that those district court orders which require disclosures of bank accounts in aid of execution of the Final Judgment (ER-4) as Plaintiff has disclosed, or to disclose 5 year old accounting from a charitable organization to whom Plaintiff assigned attorney's fees, may be subject to a contempt citation. But here Plaintiff has faithfully and in good faith complied with all orders of the district court and has disclosed all documents and information requested to be disclosed. There was no contrary evidence and, consequently, none could be produced.

Non-payment of a money judgment, particularly where Appellant shows irrefutable proof of his insolvency, does not subject him to a contempt citation. It was error for the district court to find Appellant in contempt for failure to pay attorney's fees.

### 3. District Court Erred in Threatening Appellant with Coercive Incarceration if He Did Not Pay The Entire "$44,246 Immediately And Without Delay".

Where a judgment debtor, Appellant here, is insolvent and cannot pay a judgment, he cannot be found in contempt and threatened with a debtor's prison. Appellant's insolvency was proven by documentary evidence of Appellant's bank accounts and a prior spousal maintenance judgment secured with a UCC-1 statement. Appellee never produced one iota of evidence to the contrary; had he done so, any (nonexistent) asset would still be subject to a prior, superior and senior spousal maintenance order dating back to 2013. Had there been any assets other than the meager assets disclosed by Appellant, Appellant would be required to pay his former wife, not to Mr. Stillman.

More importantly, 28 U.S.C. §2007(a) provides:

> (a) A person shall not be imprisoned for debt on a writ of execution or other process issued from a court of the United States in any State wherein imprisonment for debt has been abolished. All modifications, conditions, and restrictions upon such imprisonment provided by State law shall apply to any writ of execution or process issued from a court of the United States in accordance with the procedure applicable in such State.

California's Constitution abolished imprisonment for debt. *See* California constitution at Section 10. ("A person may not be imprisoned in a civil action for debt or tort, or in peacetime for a militia fine.") The imprisonment for debt having been constitutionally abolished by the California Constitution in a manner

particularly applicable to this case, Plaintiff cannot be imprisoned, nor threatened with imprisonment, for a simple money debt created by the Final Judgment (ER-4).

It was improper for the district court to find Appellant in contempt for his inability to pay the judgment, and to threaten Appellant with debtor's prison if he did not.

## **CONCLUSION AND PRAYER FOR RELIEF**

For the above reasons, Appellant respectfully requests that the entirety of district court's orders relating to payment of attorney's fees, the finding of contempt and the threat of coercive incarceration be stricken.

RESPECTFULLY SUBMITTED this 6th day of October 2021.

PETER STROJNIK

/s/ Peter Strojnik
Peter Strojnik
Appellant

**CERTIFICATE OF COMPLIANCE**

This Opening Brief complies with FRAP 32(a)(7)(B) because it contains exactly 4,695± words and is less than thirty pages.

**STATEMENT OF RELATED CASES**

There are no related cases that fit the criteria set forth in Circuit Rule 28-2.6.

**CERTIFICATE OF SERVICE**

I certify that on October 6, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and four copies of the Excerpt of Record will be hand-delivered and filed in person with the Clerk and one copy mailed to counsel for Appellees upon the Court's further instruction.

/s/ Peter Strojnik